**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **LIBERTY MUTUAL FIRE INSURANCE COMPANY** | : : : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| **v.** | : | |
| **KAREN SKOROCHOD, et al.** | : | **NO. 15-cv-04365-RAL** |
| **Defendants.** | : : | |

<u>**MEMORANDUM OPINION**</u>

**Richard A. Lloret**                                      **January 19, 2018**
**United States Magistrate Judge**

**I. Introduction and procedural history.**

Anthony Skorochod and Robert Mills Jr. were riding an ATV owned by Anthony the evening of October 29, 2012, as a storm rolled in. The ATV hit a downed tree, ejecting both young men. Robert died from his injuries. Anthony was badly injured, but survived. The Estate of Robert Mills Jr., along with Robert Mills and Cathy Vaughn, the parents of Robert Mills Jr., commenced a wrongful death action against Anthony Skorochod and others in the Court of Common Pleas for Northampton County, where the accident happened. At the time of the accident, Karen Skorochod, Anthony's mother, was insured under a homeowner's policy issued by Liberty Mutual Fire Insurance Company.

Liberty Mutual filed this federal action against Anthony Skorochod, Karen Skorochod, and the plaintiffs in the underlying tort action (the "Estate Defendants") seeking a declaration that Liberty Mutual has no duty to defend or indemnify the Skorochods because policy language excluded this particular risk.

Liberty Mutual now seeks summary judgment declaring that they have no duty to defend or indemnify the Skorochods under the policy. The Estate Defendants filed a pleading titled "Motion for Summary Judgment," Doc. No. 47, but have not actually asked for a judgment declaring that Liberty Mutual must defend and indemnify the Skorochods.[1] The Skorochods have not filed for summary judgment, but resist Liberty Mutual's motion. Doc. No. 52.

For the reasons set forth below, Liberty Mutual's Motion for Summary Judgment is denied. I will also deny the Estate Defendants' motion. Finally, I will issue an order to show cause requiring the parties to explain why I should not grant summary judgment, *sua sponte*, to the Skorochods, as to Liberty Mutual's duty to defend.

## II. Standard of Review.

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).[2] Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). An issue is "genuine" only if there is a sufficient evidentiary basis for a

---

[1]     The Estate Defendants did not actually ask for a declaration as to Liberty Mutual's duties under the policy, or submit a proposed order seeking such relief. Doc. No. 47. The Estate Defendants' various memoranda simply contest Liberty Mutual's right to summary judgment. It is the Estate Defendants' responsibility to make clear what affirmative relief they seek. In any event, the Estate Defendants would not be entitled to summary judgment on the indemnity issue, since there is a genuine issue of material fact.

[2]     I will call this the "motion burden," as opposed to the burden of proof at trial. It becomes important to differentiate between different burdens in this case.

reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A court evaluating whether there is sufficient evidence to go to trial must measure the evidence against the burden of proof at trial, *id.* at 252, after crediting the non-moving party's evidence and drawing all reasonable inferences against the moving party. *Id.* at 255.

When a moving party bears the burden of proof at trial,[3] the moving party "must show that it has produced enough evidence to support the findings of fact necessary to win." *El v. Southeastern Pennsylvania Transp. Authority (SEPTA)*, 479 F.3d 232, 237 (3d Cir. 2007) (citations omitted). "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *Id.* at 238. Because the trial burden "includes the obligation to persuade the factfinder that one's propositions of fact are indeed true . . . if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id.*

If the moving party successfully shows facts necessary to satisfy its burden of proof at trial, the non-moving party must point "to evidence in the record that creates a genuine issue of material fact." *Id.* (citation omitted). Allegations and denials in pleadings will not do. Fed. R. Civ. P. 56(e)(2). The non-moving party must point to actual evidence in the record on which a jury could decide an issue of fact its way. *Berckeley Inv. Group, Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006) ("In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party . .

---

[3]      I will refer to this as the burden of proof, or trial burden.

."). "Specious objections" cannot defeat a motion for summary judgment, but "real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." *El v. SEPTA*, 479 F.3d at 238.

When the tables are turned, and the non-moving party bears the trial burden on an issue, "the [motion] burden on the moving party may be discharged by "showing"— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. The non-moving party need not depose its own witnesses, but must respond with evidence that would be admissible at trial:

> Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

*Celotex Corp.*, 477 U.S. at 324. An affidavit suffices to establish what a witness would say at trial. *See Woloszyn v. County of Lawrence*, 396 F.3d 314, 323 (3d Cir. 2005). So does an unsworn declaration under oath. *Unzicker v. A.W. Chesterton Company*, 2015 WL 12941900, at *1 (E.D. Pa. 2015). And while a court cannot rely on inadmissible evidence in deciding a summary judgment motion, hearsay evidence produced in opposition to a summary judgment motion may be considered "if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form that would be admissible at trial." *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) (no indication that the declarants who made the statements mentioned in the opposition materials would not be available for trial).

### III. Discussion.

Subject matter jurisdiction over this case is founded on diversity. I must apply Pennsylvania substantive law and federal procedural law. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011). The burden of proof at trial is a matter of substantive law. *Dick v. New York Life Ins. Co.,* 359 U.S. 437, 446–47 (1959); *Blair v. Manhattan Life Ins. Co.,* 692 F.2d 296, 299 (3d Cir. 1982) (citations omitted). The parties have thoroughly disagreed about who bears the burden of proving coverage (or non-coverage) under the policy, what type of evidence may be produced to satisfy that burden, and whether the burden – whoever bears it - has been met.

### A. The contours of the dispute.

Liberty Mutual concedes, for purposes of this motion, that although the Skorochods bear the initial burden of demonstrating coverage under the policy, the language in "Coverage E – Personal Liability" applies to this accident. As defined in the policy, the Skorochods are "insureds," there was "bodily injury" to Robert Mills Jr., the injury arose from an "occurrence," and the Skorochods face legal liability for this bodily injury. Appendix, 91 (A91). Doc. No. 46-6 at 18. Liberty Mutual relies upon exclusionary language found in "Section II – Exclusions," ¶ (1)(f), to deny coverage. Doc. No. 48 at 5; A91. Liberty Mutual concedes that it bears the burden of proving an exclusion of coverage, but contends that it has borne its burden, because there is no dispute that the ATV was a motorized land conveyance, and coverage is excluded when bodily injury arises out of the ownership of "motorized land conveyances . . . owned or operated by . . . an 'insured.'" *Id.;* A91, ¶ 1(f)(1).

The Skorochods note that "Section II – Exclusions," ¶ (f)(4)[4] of the policy says that "[t]his exclusion does not apply to: (4) A vehicle or conveyance not subject to motor vehicle registration which is: (a) Used to service an 'insured's' residence[.]" A92. The Skorochods further note that the underlying complaint, filed by the Estate Defendants, alleges that the ATV serviced the insured property.[5] Doc. No. 52 at 7. The Skorochods argue that under Pennsylvania law only the allegations within the "four corners" of the underlying complaint are admissible when interpreting the policy language to determine coverage. *Id.* Since the complaint contains allegations sufficient to trigger coverage, the Skorochods contend that Liberty Mutual should not be granted summary judgment.

The Estate Defendants argue that summary judgment for Liberty Mutual is not appropriate because there is sufficient evidence in the record to create a genuine issue of material fact about whether the ATV was used to service the insured's residence. Doc. No. 63.

Liberty Mutual argues that the language in paragraph (f)(4) of the insurance policy is an "exception" to the exclusion, and that the insureds – the Skorochods - therefore bear the burden of proving that it applies, under Pennsylvania law. Doc. No. 48 at 5. Liberty Mutual contends that the Estate Defendants have failed to point to

---

[4]     Following the language at the beginning of paragraph 1, which says that liability coverage *"do[es] not apply to bodily injury,"* sub-paragraph 1(f) begins with the words *"Arising out of"* and proceeds with three sub-subparagraphs (1, 2 and 3) that define circumstances in which liability coverage does not apply, all of which concern motor vehicles. A92 (emphasis added). After sub-sub-paragraph 3, sub-paragraph (f) proceeds with a sentence that begins *"This exclusion does not apply to[,]"* followed by four more sub-subparagraphs (1, 2, 3 and 4) that define circumstances in which the exclusionary language does not apply. *Id.* (emphasis added).

[5]     Paragraphs 8 and 9 of the underlying complaint allege that the ATV was used to service the Skorochod's property, both prior to and at the time of the accident. A18.

admissible evidence that would satisfy their burden of proving that the ATV was used to service the residence. Doc. No. 48 at 6.

### B. The allegations of the underlying complaint trigger a duty to defend under the policy.

Pennsylvania law requires that only the allegations of the underlying complaint – the "four corners" of the complaint - be consulted when determining whether a duty to defend exists under an insurance policy. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006) ("the obligation of a casualty insurance company to defend an action brought against the insured is to be determined *solely* by the allegations of the complaint in the action") (citations and internal quotations omitted).

The "four corners" doctrine is tempered by the consideration of extrinsic evidence when an insured must prove an exception to an exclusion triggered by the language of the complaint. *See Air Products and Chemicals, Inc. v. Hartford Acc. and Indem. Co.*, 25 F.3d 177, 180 (3d Cir. 1994). The rule admittedly favors the insured by denying the insurer the ability to prove a lack of coverage under an exclusion except by reference to the language of the complaint, while permitting an insured to prove by extrinsic evidence (*i.e.,* evidence beyond the allegations of the complaint) that an exception to an exclusion is applicable, such that coverage exists. *Id.*

Here, the allegations in the complaint trigger a duty to defend by alleging facts that fall within the exception to the policy's exclusionary clause. Consequently, Liberty Mutual, rather than its insured, now seeks to admit extrinsic evidence on the coverage issue in order to defeat the allegations of the complaint and eliminate its duty to defend

the Skorochods.[7] The argument is ingenious, but unconvincing. No Pennsylvania case cited to by Liberty Mutual has permitted this in the context of a duty to defend.

It is important here to distinguish the duty to defend from the duty to indemnify. The burden shifting scheme argued by Liberty Mutual arose in the context of a trial of a particular indemnity issue – whether a pollution discharge was "sudden and accidental," and therefore a covered risk under an insurance policy. *See Lower Paxton Twp. v. U.S. Fidelity and Guar. Co.*, 557 A.2d 393, 399 (Pa. Super. 1989). The Superior Court held that the trial court properly instructed the jury that the insured (a plaintiff) bore the burden of proving that the pollution discharge was "sudden and accidental," an exception to the general exclusion of losses due to pollution discharges, relying on language in *Techalloy Co., Inc. v. Reliance Ins. Co.*, 487 A.2d 820 (Pa. Super. 1984). *Lower Paxton Twp.,* 557 A.2d at 403. The Pennsylvania Superior Court held that there was insufficient evidence before the jury to prove a sudden discharge, under the policy language as properly construed. The only evidence in the case was that the methane gas at issue had dispersed "gradually." *Id.* at 403.

The *Techalloy* decision, relied upon in *Lower Paxton,* held in the context of a motion for judgment on the pleadings that the complaint did not allege a "sudden and accidental" discharge, and that the insured, a plaintiff, had not shown otherwise in the limited record developed prior to the motion by the insurer. *Techalloy,* 487 A.2d at 827-28. The *Techalloy* court distinguished the holding in *C. H. Heist Caribe Corp. v.*

---

[7]    Liberty Mutual also argues that because there is no admissible evidence of a duty to indemnify, there can be no duty to defend. Because I conclude that there is a genuine issue of material fact precluding judgment on the indemnity issue, *infra,* at part III(C), that route to judgment is also foreclosed. I address the burden shifting argument in the context of the duty to defend first because I wish to be clear about the different standards governing evaluation of a duty to defend and a duty to indemnify.

*American Home Assur. Co.*, 640 F.2d 479, 483 (3d Cir 1981), in which the Third Circuit had affirmed the denial of summary judgment on similar facts, because the underlying complaint in *Heist* "did not describe in detail the circumstances surrounding the incident" . . . thus preclud[ing] the appeals court from considering the applicability of the exclusion" before trial. *Techalloy Co., Inc.* 487 A.2d at 827. Neither *Lower Paxon Twp.* nor *Techalloy* stands for the proposition that an insurer may introduce extrinsic evidence in order to negate its duty to defend at the summary judgment stage of a proceeding.

The opinion in *Air Products* noted that some Pennsylvania cases permitted an *insured* to rely upon extrinsic evidence to prove that an exception to an exclusionary clause applied to the dispute, triggering a duty to defend, but rejected the insurer's attempt to introduce extrinsic evidence to demonstrate that it had no obligation to defend the insured. 25 F.3d at 180. As the court explained,

> [w]e recognize that the rule permitting the introduction of evidence to show that an exception to an exclusion applies, while disallowing evidence to show that an exclusion applies, appears to be one-sided. This construction against the insurer and in favor of the insured, however, is consistent with general insurance law principles and, in particular, the Pennsylvania rule that requires only a "potential" of coverage of the allegations in the complaint for the duty to defend to be triggered.

*Id.*

In *Northern Ins. Co. v. Aardvark Assocs.,* 942 F.2d 189 (3d Cir 1991), relied upon in *Air Products,* the court of appeals relied in turn upon the reasoning in *Lower Paxton Twp.* and *Techalloy* to predict that the Pennsylvania Supreme Court would impose the burden of proving a "sudden and accidental" discharge on the insured at a trial of the indemnity issue. *Id.* at 195. As to this issue, the court found no genuine issue

of material fact in the record before it. *Id.* By contrast, when analyzing the duty to defend, the court of appeals examined only the underlying EPA complaint to determine whether there were any allegations of "sudden and accidental" discharge, and found none. *Id.* at 195-96.

These cases supply me with guidance. A duty to defend is broader than a duty to indemnify. *Kvaerner*, 908 A.2d at 896 n.7. When deciding whether an insurer has a duty to defend, a court must examine only the allegations of the underlying complaint, and determine if they trigger potential coverage. *Kvaerner,* 908 A.2d at 896. If the language of the complaint alleges facts that would trigger an exclusion to coverage, but does not allege facts that would make applicable an exception to the exclusion, the insureds may introduce extrinsic evidence to prove an exception to a policy exclusion. *Air Products,* 25 F.3d at 180.

As to the duty to defend, the insureds in this case need not rely on extrinsic evidence, because the allegations of the complaint clearly trigger coverage under the exception for a motorized conveyance that services the property. Liberty Mutual may not rely on extrinsic evidence to negate the exception and prove that its exclusionary language applies, at least not with respect to the duty to defend. At this stage, Pennsylvania's "four corners" doctrine requires Liberty Mutual to abide by the consequences of the allegations contained within the underlying complaint.

Accordingly, I will deny Liberty Mutual's motion, as it pertains to the duty to defend the underlying complaint. Although it appears that the Skorochods are entitled to summary judgment on the duty to defend as a matter of law, they have not moved for relief. I will therefore give the parties an opportunity to explain why I should not enter summary judgment on the duty to defend in favor of the Skorochods.

**C. There is a genuine issue of material fact about whether the ATV was used to service the insured's property, which precludes summary judgment on the indemnity issue.**

The duty to indemnify is subject to different rules than the duty to defend.

> Unlike the duty to defend, a determination of the duty to indemnify is not necessarily limited to the factual allegations of the underlying complaint. Rather, there must be a determination that the insurer's policy *actually* covers a claimed incident.

*State Farm Fire and Cas. Co. v. DeCoster*, 67 A.3d 40, 46 (Pa. Super. 2013) (citations and internal quotations omitted).[8] The trier of fact must determine whether the circumstances of the event are covered under the policy, based on evidence, unless there is no genuine issue of material fact. *Id.; see also Northern Ins. Co.,* 942 F.2d at 195.

In this case, summary judgment is inappropriate on the issue of indemnity coverage because there is a genuine issue of material fact. While the parties disagree over who bears the burden of proof at trial, the trial burden is not crucial to the decision. I will deny Liberty Mutual's motion seeking a declaration that it has no duty to indemnify.

The key fact question on the indemnity issue, as it is with the duty to defend, is whether the ATV was used to "service" the Skorochod's property. The difference is that evidence about the use of the ATV may be considered to determine the indemnity issue. *DeCoster*, 67 A.3d at 46. In determining the duty to indemnify, I am not limited to review of the underlying complaint, as I am when deciding the duty to defend. This means the trial burden comes into play. I find that whoever has the burden of proof at

---

[8]    In determining Pennsylvania law I must give due regard to the opinions of lower appellate tribunals, unless I am convinced by persuasive evidence that the Pennsylvania Supreme Court would decide the issue otherwise. *Northern Ins.*, 942 F.2d at 193.

trial,[9] there is sufficient admissible evidence in the record from which a reasonable juror could conclude that the ATV was used to service the Skorochod's property.

Several witnesses provided deposition testimony describing Anthony Skorochod's use of the ATV. Robert Mills, the father of the decedent, testified that, on the day of the

[9]     I expressed my doubts on the subject at oral argument. I asked for supplemental memoranda from the parties addressing the question, particularly in light of the opinion in *Betz v. Erie Ins. Exchange*, 957 A.2d 1244 (Pa. Super. 2008), which imposed the burden of proof on the insurer, regardless of whether the policy language at issue was an exclusion or an exception to an exclusion. *Id.* at 1255, 1257. I remain doubtful that there is a general rule, under Pennsylvania law, imposing the burden of proof at trial upon an insured to prove an exception to an exclusion of coverage, regardless of the circumstances or policy type. Liberty Mutual distinguishes *Betz* because that case involved an "all risks" policy. True enough, and it was a significant consideration, but that was not the only rationale for the decision in *Betz*. More important was the court's concern that a burden shifting rule would "merely empower insurers to manipulate the burden of proof by sleight of hand." *Id.* at 1257 n.5. That is not a concern limited to "all risks" policies. This reasoning, and not a distinction based on the special circumstances of an "all risks" policy, was the basis of the Superior Court's outright rejection of the burden shifting rule applied in *S.R.P. Management Corp. v. Seneca Ins. Co.*, 2008 WL 2039466, at *6–7 (E.D. Pa. 2008), which involved a defined risk policy. *Id.* Had the difference between an all risks and a defined risks policy been the court's critical concern, that would have been the basis for distinguishing the holding in *S.R.P. Management Corp.* But the court in *Betz* did not mention the all risks/defined risks distinction when rejecting the holding in *S.R.P. Management Corp. Id.*

    The ordinary rule is that the insurer, not the insured, bears the burden of excluding coverage, once the insured demonstrates that the risk comes under the general coverage language, and that includes negativing exceptions to exclusions. *New Castle County v. Hartford Acc. and Indem. Co.*, 933 F.2d 1162, 1182 (3d Cir. 1991) (quoting 19 G. Couch, *Couch on Insurance 2d* § 79:385, at 338 (M. Rhodes rev. 2d ed. 1982)). Some cases have adopted the rule applied in *Lower Paxton Twp. Id.; see Northern Ins. Co.* 942 F.2d at 195 (following *Lower Paxton Twp.*). While our court of appeals has predicted that the Pennsylvania Supreme Court would adopt a burden shifting rule in the context of policies with a "sudden and accidental" exception to pollution exclusion language, it carefully limited its holding to that particular phrase, and did not predict adoption of a generalized burden shifting rule. *Id.* The language of *Betz* does not suggest a settled, generalized burden shifting rule under Pennsylvania law. Rather, it suggests that, as in the "sudden and accidental" cases, a particularized analysis is appropriate. Cases that describe the general considerations to be taken into account when allocating a burden-of-proof should prove helpful. *See, e.g., Barrett v. Otis Elevator Co.*, 246 A.2d 668, 674 (Pa. 1968); *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 408–09 (Pa. 2014). The parties will have an opportunity to submit jury instructions and trial memoranda reflecting their views before trial of the indemnity issue.

accident, "Anthony shows up on his four-wheeler and wants my son to go with him and help him get a generator and get it running at their house. . . Anthony left on his four-wheeler. My son left in his pickup truck and drove down to Anthony's house." Mills Dep., 1/25/17, at 18-19. "Anthony said that they had got one [a generator] and they had to go pick it up and get it running. And could Robbie please – Would I please let Robbie go with him to get it." *Id.* at 41. "They had a generator somewhere close by. They were going to get it. . . And they were going to fire it up and they were going to get it ready so that his house had adequate electric, as well. . . He practically begged me to let my son help him, and I did." *Id.* at 45. "Around 7:30 p.m. I called him [Robert Mills Jr.] . . . [a]nd he said he will be home shortly. They were still working on getting, you know, that ready or going to get it or whatever." *Id.* at 19-20. Mr. Mills "had no understanding of what they were going to do, except they were going to get a generator that was close by, and they were trying to do it. And I thought it was a little late, because the storm was probably within three or four hours of coming in and getting serious." *Id.* at 49.

Mr. Mills thought he saw a generator "being taken back. I know I seen compressors and stuff and gas cans and whatever. I mean, like I said, they obviously used it that night . . . I don't know if they ever got it hooked up." *Id.* Mr. Mills saw a compressor shortly after the accident, in a vehicle driven by Anthony Skorochod. *Id.* at 50-51. The deposition testimony is unclear, but this episode appears to have happened the day after the accident. *Id.* at 51.

Mr. Mills further testified that he saw Anthony Skorochod "haul a lot of stuff around . . . if they needed fuel oil for the house, if he needed a generator, if they needed gasoline for the mowers. It was his form of a pickup truck in my eyes." *Id.* at 34. Mr. Mills saw Anthony Skorochod do this "hundreds" of times. *Id.* Mr. Mills testified that

Anthony Skorochod used a wagon for the ATV, *id.* at 50, and used the wagon "all the time." *Id.* at 53.

Mr. Raymond N. Gerry testified that he saw Anthony Skorochod driving the ATV with a wagon attached, hauling gas cans, "[b]oard type wood, also firewood type wood." Gerry Dep., 1/25/17, at 18-19. When Gerry saw him driving the ATV, sometimes Skorochod had a wagon attached to the ATV. *Id.* at 20.

Allen Wilson stated[10] that he was with Robert Mills at the scene of the accident a short time after the accident when a young man in a back brace and a sling drove up in an ATV, towing a trailer with a compressor in it. Wilson Statement at 5-8. The young man talked with Robert Mills while Wilson listened. *Id.* at 9. The young man said he was taking the compressor to "some farm, he said down the road." *Id.* at 11. Wilson identified the ATV in a picture. *Id.* at 6. The ATV appeared to have been in an accident. *Id.* at 8. Wilson saw the same young man driving the same ATV, towing the same wagon, at Robert Mills' house, perhaps the same day, where he picked up some tools. *Id.* at 10. Wilson also saw the same young man at Robert Mills. Jr's viewing. *Id.* at 13, 14.

Liberty Mutual argues that the testimony from Mr. Mills, Mr. Gerry and Mr. Wilson is not relevant, not admissible, and not sufficient to raise a genuine issue of material fact. I disagree.[11]

---

[10]     The parties did not depose Mr. Wilson. Mr. Wilson did, however, provide a statement to a private investigator at the behest of counsel for the Estate Defendants. The investigator certified under oath that he took Mr. Wilson's statement on January 8, 2014 and subsequently had it transcribed. Wilson Statement at 16-17. The transcriptionist certified that she was a notary public and a certified court reporter of the State of New Jersey, and that the transcription was accurate. *Id.* at 16.

[11]     In his statement to the police the day after the accident, Anthony Skorochod said he was using the ATV to get a generator, Doc. No. 51-1 at 8, but in his deposition testimony he did not remember making this statement, or anything about the accident.

First, the pre-accident statements by Anthony Skorochod and Robert Mills Jr. to Robert Mills about their plan to go get a generator are admissible. These statements are out-of-court declarations of the two declarants' then existing intent or plan. Fed. R. Evid. 803(3). Rule 803(3) permits a declarant's "then existing state of mind (such as motive, intent, or plan) . . . but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." This is a restatement of the common law rule described in *Mutual Life Ins. Co. of New York v. Hillmon* 145 U.S. 285, 295-97 (1892) (letters describing a dead victim's intent to travel with the defendant admitted as evidence tending to make it more likely he carried out his plan). *See U.S. v. Donley*, 878 F.2d 735, 738 (3d Cir. 1989) (the statement of a murder victim was admissible to prove her plan to separate from the defendant and force him out of their house, as a prelude to proving the defendant's motive to kill her).

The pre-accident conversation with Robert Mills concerned the two young men's present and future intent and plan. The statements are not offered to prove the likelihood of an event that happened *before* the conversation, but one occurring after the conversation. *See Shepard v. United States*, 290 U.S. 96, 106 (1933) (the temporal distinction is critical in limiting the scope of the rule); *U.S. v. Hernandez*, 176 F.3d 719, 727 (3d Cir. 1999) (such evidence could not be used to prove the occurrence of an event prior to the statement, but only a present intent or plan of action). Nor are the statements proffered to prove the underlying circumstances that motivated or triggered

Skorochod Dep., 4/27/17, at 41-49. The Estate Defendants claim that Anthony's statement to the police is admissible as an excited utterance under Federal Rule of Evidence 803(2). The foundation for that hearsay exception – that Skorochod was still under the stress of excitement caused by the accident – has not been established. I will not consider the statement as evidence at this point.

a state of mind. *See Shepard,* 290 U.S. at 106 (statement by a victim that she had been poisoned was an inadmissible description of a past act, used for the purpose of proving that act, not a statement of state of mind or intention).

In this case, the defendants will be permitted to admit the young men's statements in order to prove (1) that their then existing plan was to fetch a generator to use on the Skorochod's property, and (2) that they followed through on their plan, an event that would have occurred after the statement. Evidence of a plan permits a jury to infer the plan was carried out. *See Hillmon* 145 U.S. at 295-97; *Donley*, 878 F.2d at 738. Based on this evidence, a reasonable jury could conclude that the two young men were using the ATV to fetch a generator to "service" the Skorochod's property, on the night of the accident.

The term "service" is not defined in the policy, and a common sense understanding of the word covers getting a generator to supply electricity for the Skorochod's home in the face of a storm. *See Kvaerner*, 908 A.2d at 897 (common words in a policy should be given their ordinary meanings). The term used in the policy does not require that the ATV was being used to service the property at the moment of the accident, nor does Liberty Mutual contend that the policy should be read that way.

The deposition testimony provides additional evidence from which a jury could conclude that the ATV was used to "service" the Skorochod's home. Mr. Mills testified that he saw Anthony Skorochod "haul a lot of stuff around . . . if they needed fuel oil for the house, if he needed a generator, if they needed gasoline for the mowers. It was his form of a pickup truck in my eyes." Mills Dep., 1/25/17, at 34. Mr. Mills saw Anthony Skorochod do this "hundreds" of times. *Id.* Mr. Mills testified that Anthony Skorochod used a wagon for the ATV, *id.* at 50, and used the wagon "all the time." *Id.* at 53. Mr.

Mills thought he saw a generator "being taken back. I know I seen compressors and stuff and gas cans and whatever. I mean, like I said, they obviously used it that night . . . I don't know if they ever got it hooked up." *Id.*

Mr. Mills saw a compressor shortly after the accident, while at the scene of the accident. The compressor was loaded in the ATV, which was being driven by Anthony Skorochod, who stopped and spoke with Mr. Mills. *Id.* at 50-51. The deposition testimony is unclear, but a jury could reasonably conclude that this episode happened the day after the accident. *Id.* at 51. Liberty Mutual contends that this post-accident event is not admissible to prove Skorochod's use of the ATV to service the property. I disagree.

Under Pennsylvania law, if the language of the policy is reasonably susceptible of more than one meaning, I must adopt the interpretation most favorable to the insured. *Prudential Property and Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1174 (Pa. 2006). There is no temporal nexus between "service" and the accident; the policy does not say, for instance, exactly when the insured must use the ATV to service the property, or how often, in order to escape exclusion from coverage. A reasonable jury could find that Skorochod used the ATV the day after the accident to haul items back to a location where he'd gotten them the night before, in connection with his efforts to hook up a generator for the property. That inference is not inevitable, but it does not need to be, to be admissible. In short, the "fact of consequence," under the language of Rule 401 of the Federal Rules of Evidence, is whether the ATV was used to service the property, not whether it was being used to service the property at a particular time, for instance, the night of the accident.

Under a broad but fair definition of "service," Skorochod's use of the ATV to haul a compressor and gas cans the day after the accident is competent proof of "service," if a jury links the significance of that chore to Skorochod's pre-accident statement that he planned to get a generator for the property. The post-accident testimony from Robert Mills is certainly relevant to a trier of fact required to make a fact determination under a broad definition of service. Rule 401 requires only that a piece of evidence, or an inference drawn from that evidence, makes a fact of consequence more or less likely. Fed. R. Evid. 401. The deposition testimony satisfies that test.

Second, even if this act is viewed as a subsequent act, under Rule 404(b)(2), and not part of the proof of "service," as broadly defined under the policy, there is nothing inherently inadmissible about subsequent acts, as opposed to prior acts. *Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 520 (3d Cir. 2003) ("The fact that the evidence involved a subsequent rather than prior act is of no moment.") (quoting *United States v. Germosen,* 139 F.3d 120, 128 (2d Cir. 1998)). A reasonable jury could infer that Skorochod's act of carting around a compressor and gasoline cans the day after the accident tended to make it more likely that he carried out his plan to fetch and hook up a generator, which he mentioned shortly before the accident. *See U.S. v. Cook*, 745 F.2d 1311, 1318 (10th Cir. 1984) (subsequent acts of misidentification were "essentially a continuing part of [the defendant's] plan to give a false identity to the bank, the very offense charged in the indictment.").

Anthony Skorochod's post-accident statement to Mills, overheard by a third-party witness, Allen Wilson, who was with Mills at the time, stands on a different footing. It is an out-of-court declaration, and subject to exclusion as hearsay unless it

comes within a hearsay exception.[12] Wilson said a young man talked with Robert Mills while Wilson listened. Wilson Statement at 9. The young man said he was taking the compressor to "some farm, he said down the road." *Id.* at 11. While Wilson was never introduced to Skorochod, he identified the ATV and the young man sufficiently that a reasonable juror could conclude that it was Skorochod who spoke with Robert Mills, and that Skorochod was driving the ATV involved in the accident, with a compressor loaded on the ATV.

If the defendants were limited to proving that Skorochod used the ATV on the night of the accident to "service" the property, then they would be seeking to introduce a statement about Skorochod's intent or plan (to take a compressor to a nearby farm) to prove a past event (his use of the ATV to fetch a generator on the day of the accident). That is a prohibited use, under Rule 803(3). *See Hernandez*, 176 F.3d at 727 (evidence of the declarant's then-existing state of mind could not be used to prove the occurrence of an event prior to the statement, but only a present intent or a plan of action). But I have found that the defendants are not so limited. The definition of "service" under the policy is broad enough to encompass proof that Skorochod was using the ATV the day after the accident to service the property. The jury could use the evidence of his statement to infer that Skorochod carried through on his plan to haul the compressor to a farm. This use would be competent proof of a pattern of using the ATV to "service" the property, under a reasonable understanding of that term as it is used in the policy. While an instruction would be necessary to guide the jury on the permissible inference that might be drawn from the evidence, properly considered by the jury, Skorochod's

---

[12]     Rule 803(3), concerning statements of the declarant's then-existing state of mind such as motive, intent, or plan, may provide such an exception. Fed. R. Evid. 803(3).

post-accident statement would fall within Rule 803(3), and therefore be "capable of being admissible at trial." *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (citations and internal quotations omitted). That is all that is required, at this stage.[13]

Liberty Mutual contends that Allen Wilson's statement is inadmissible, because it was not reduced to a format that complies with Rule 56(c).[14] I disagree. Wilson's statement was not reduced to an affidavit. The statement was recorded by an investigator for the defendants, and later transcribed by a certified court reporter, under the reporter's declaration under oath and the investigator's declaration under oath. *See* Wilson Statement at 1-2, 16.

A party opposing summary judgment need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp.*, 477 U.S. at 324 ("Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses."). "The rule in this circuit is that hearsay statements can be considered on a motion for summary judgment if they are *capable of being admissible at trial.*" *Fraternal Order of Police, Lodge 1,* 842 F.3d at 238 (internal quotation and citation omitted). "[Defendants] identified the third-party declarants, and nothing suggests that those declarants would be unavailable to testify at trial. That is all that was required to

---

[13]    Exclusion of evidence under Rule 403 at the summary judgment stage is an "extreme measure" that should be rarely invoked. *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 859 (3d Cir. 1990). At this stage I have not yet considered whether the evidence would be admissible at trial under Rule 403. That would require assessment of the statement's probative value, in light of the other evidence in the case, and its potential to create jury confusion or unfair prejudice.

[14]    The point is not dispositive. Mr. Mills' testimony, standing alone, would satisfy the defendants' motion burden to show a genuine issue of material fact. Mr. Wilson's testimony is merely corroborative of Mr. Mills' testimony about one episode involving Anthony Skorochod's use of the ATV.

survive that aspect of [Plaintiff's] motion for summary judgment." *Id.* at 239.

Defendants have identified the third-party declarant, Wilson, have supplied a

transcription of Wilson's recorded statement, and have supplied a declaration under

penalty of perjury concerning the taking of the statement. There is nothing suggesting

Wilson will not be available at trial. *Id.* at 238. I find that the Wilson statement may be

considered by me in deciding the summary judgment motions.

There is sufficient evidence from which a jury could conclude that the ATV was

used to "service" the Skorochod's property, whether the burden-of-proof on the

indemnification issue at trial is on Liberty Mutual or the defendants. Much will depend

on the credibility of the various witnesses. Whether the ATV was in fact used to service

the property will have to await determination by a trier of fact, either in the underlying

lawsuit or at a trial in this case.

**IV. Conclusion.**

For the reasons described, I will deny summary judgment to Liberty Mutual. I will deny the Estate Defendants motion. I will issue an order to show cause requiring the parties to explain why I should not grant summary judgment, *sua sponte*, to the Skorochods, as to Liberty Mutual's duty to defend. *See Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004) (court may enter summary judgment *sua sponte,* but must ordinarily provide notice of its intent to do so). I will convene a scheduling conference to determine whether this matter should be stayed, pending a trial in state court, or whether a trial date should be set for the indemnity issue.

**BY THE COURT:**


**_s/ Richard A. Lloret_**
**RICHARD A. LLORET**
**U.S. MAGISTRATE JUDGE**
